## WILL WILLIAMS v. STATE.

No. A-1661.   Opinion Filed December 2, 1913.

(136 Pac. 778.)

EVIDENCE—Admissibility—Larceny.   Over the defendant's objection a witness for the state was permitted to testify that the. defendant's father offered to pay him $50 to testify in favor of the defendant.   There was no proof tending to show that such offer to pay witness was made by the authority, consent, or knowledge of the defendant.   The court, overruling motion to strike out this testimony, said:   ''This man being the defendant's father, I will let it stay in.''   **Held,** that the evidence was incompetent and inadmissible and was calculated to prejudice the defendant, and that the erroneous rulings of the court constitute reversible error.

*Appeal from District Court, Choctaw County;*
*A. H. Ferguson, Judge.*

Will Williams was convicted of larceny of a domestic animal, and appeals.   Reversed.

*Richardson & Warren,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson* and *C. J. Davenport,* Asst. Attys. Gen., for the State.

DOYLE, J.   Plaintiff in error was indicted for the larceny of a two year old heifer and upon his trial was found guilty and was sentenced to be imprisoned in the penitentiary for one year.   The judgment of conviction is here for review.

Among the numerous errors assigned is one, the consideration of which must result in a reversal of the judgment.   As a witness for the state, Earl Hunt testified that he saw the defendant, Will Williams, and his codefendants, Dave White and George Hughes, driving a yearling, and that the defendant, Will Williams, shot it.   He was then asked if he talked to Mr. J. T. Williams, the father of the defendant, about this case, and answered, "Yes."   He was then asked, "I will ask you how much he offered you to testify in this case?" and

answered: "You want me to tell what he said to me?" "Yes, go ahead and state it." Over the defendant's objection the witness was permitted to answer as follows:

"We was coming on this train one day and down here at this little station, McCanns Spur, they stopped the train, something got wrong with it, and Mr. Williams came up and slapped me on the shoulder and said, 'I want to speak to you.' We stepped off, and he said, 'What do you know about the case against the boys?' I says, 'Mr. Williams, I cannot tell you anything about the case and ain't going to tell a thing about it.' He says, 'You know what the boys swore and I will give you $50 in money (and he put his hands in his pocket) if you will get up and swear that you were with the boys that day and did not see anything like this.' I says, 'I won't do it;' and about that time the train started on. That's what I told him."

The defendant moved to strike out the answer, which was overruled; the court saying: "This man being the father of the defendant, I will let it stay in." To which language of the court the defendant excepted. In the brief for the state it is said: "We are unable to see how this testimony was admissible." The defendant was not present when this alleged conversation occurred, and the evidence of the state fails to in any way connect him with the alleged proposition of his father. As a witness in his own behalf, the defendant denied any knowledge of such proposition; and his father, J. T. Williams, as a witness denied making any such offer to the state's witness Earl Hunt. That this testimony was incompetent and prejudicial to the defendant we think there can be no doubt. If the minds of the jury were wavering on the question of the innocence or guilt of the defendant, this incompetent testimony which the court had sanctioned with judicial approbation was sufficient to turn the scale against the defendant.

In the case of *Bruner v. U. S.*, 1 Okla. Cr. 205, 96 Pac. 597, a witness testified that the defendant's brother had offered to pay her $25 if she would testify in the defendant's behalf. Counsel for the defendant moved to strike this testimony out for the reason that it was not shown that the defendant was connected with the making of the offer. The court overruled

the motion to strike. Mr. Justice Dunn, delivering the opinion of the court, after reviewing numerous decisions, said:

"Nor, as we have above said, are we able to say that this evidence was not prejudicial to the defendant. He was entitled to have the issue of his guilt or innocence presented to the jury upon the relevant and competent evidence properly applicable thereto, and he was entitled to be relieved of the damaging cloud which evidence of this character would throw over his entire case, unless he was responsible for it. The illimitable scope of undeserved damage the cause of a defendant might suffer through friends or enemies, should evidence of this character be admissible, is readily seen; and where in a case such evidence appears, and it is not clearly shown that the defendant is responsible for it, and proper exceptions are saved, a conviction will not be sustained."

We deem it unnecessary to review the other errors assigned. For error in the rulings of the court with regard to the admissibility of the testimony discussed, the judgment of conviction is reversed, and the cause remanded for another trial.

ARMSTRONG, P. J., and FURMAN, J., concur.