## SOL FREEMAN v. STATE.

No. A-3717.    Opinion Filed Feb. 3, 1922.
(203 Pac. 1052.)

(Syllabus.)

1.    **Continuance—Ground of Absent Witness—Insufficient Showing.** Where the accused asked for a postponement of the trial on account of the absence of a material witness, and the facts stated in the application as to the diligence used in endeavoring to procure the attendance of the witness and the facts stated relative to the probability of procuring his attendance later are indefi-

nite and uncertain, under the circumstances here the court's refusal to grant a continuance is not error.

2.    Evidence—Presumption from Failure to Introduce Important Testimony. The correct rule as to the presumption arising where a party fails to introduce important testimony relating to facts within his knowledge and control and peculiarly within his reach is that such failure raises the presumption, open to explanation, of course, that the testimony, if produced, would be unfavorable to him.

3.    Attorney and Client—No Implied Power of Defendant's Attorney to Suppress Evidence. An attorney for a defendant in a criminal case, like other agents, binds his principal only within the scope of his authority, express or implied. There can be no implied power lodged with an attorney trying a case to suppress evidence in violation of the penal laws of the state.

4.    Same—Defendant not to be Prejudiced by Attorney Inducing Witness to Absent Himself. If the defendant's attorney, in the absence of the defendant during a recess of the trial and without his procurement, consent, or approval, induced a witness to absent himself from court, such action should not prejudice the rights of the defendant.

5.    Trial—Jury Should Retire While Competency of Prejudicial Evidence is Discussed. Where proffered testimony indicates that it may be incompetent, and if incompetent probably prejudicial, it is the better practice for the court, on his own initiative, or at the request of the objecting party, to have the jury retire while the competency of the proffered testimony is being discussed.

6.    Same—Discussion in Jury's Presence—Prejudicial Error. Damaging and clearly incompetent statements of facts, to the effect that the son of the defendant, who had not been called as a witness, had confessed that his father was guilty, should not be permitted in the presence of the jury.

    (a) Under the circumstances here, a long and heated discussion in the presence of the jury concerning such confession was prejudicial error.

Appeal from District Court, Hughes County; Geo. C. Crump, Judge.

Sol Freeman was convicted of the larceny of domestic animals and sentenced to two years' imprisonment in the state penitentiary, and he appeals. Reversed and remanded.

Anglin & Stevenson and C. E. Hall, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J.   Sol Freeman, plaintiff in error, in this opinion designated the defendant, was, by information filed in the district court of Hughes county, on March 8, 1919, charged with the theft of a steer on August 1, 1918.   By verdict of the jury at the trial he was found guilty as charged September 9, 1919, and his punishment fixed at two years' imprisonment in the state penitentiary, and from the judgment on this verdict he appeals to this court.

The testimony on the part of the state tends to show that the animal in controversy was the property of Andy Sellars, branded with a distinct "forked lightning" brand, and that there were other distinguishing marks on the animal; that some time prior to the alleged offense this animal escaped from the owner's premises and was afterwards seen at a dipping vat where the defendant was engaged in dipping cattle, and afterwards seen with some live stock that were being sold and shipped by the defendant.   Two witnesses testified that they saw the animal in question in the stock pens at Dustin just before being loaded for shipment.

The defendant and other witnesses testified that the animal in question was not among the live stock shipped by the defendant; that there were only two steers in this shipment; and identified the brands and other marks as being different from the brands and marks of the animal owned by Sellars. There was a sharp conflict in the testimony touching upon the identifying marks.

There are but three assignments of error seriously urged in defendant's brief, namely:   (1) That the court erred in

overruling defendant's motion for a continuance; (2) the reception of incompetent and prejudicial testimony; (3) that the testimony as a whole is insufficient to support the verdict.

The motion for a continuance was based upon the absence of R. A. Strain, a witness for the defendant. The motion set out that this witness had left the jurisdiction of the court to visit in the state of Idaho and had not yet returned; that he left the state about three weeks prior to the trial, before the defendant knew that the cause was set for trial; that because of his absence from the state, although a subpoena had been issued, it could not be served on the witness; that his absence from the state was only temporary, and if the cause were continued the defendant would be able to procure his attendance at the next term of court; that the witness, if present, would testify that he was engaged in farming in the neighborhood where the defendant kept his cattle, and that upon learning that the defendant was about to ship a load of cattle to market he went to the defendant to get him to include two cows belonging to the witness; that he brought these two head of cattle to the dipping vat where the defendant had assembled his cattle to drive to the shipping point, and that there were but two steers in the bunch, one branded I JH, and the other JH, and that neither of these brands resembled the "forked lightning" brand on the steer belonging to Sellars; that one of these two steers had been cut out of the herd and afterwards broke through the fence and again joined the herd, and for that reason witness' attention was particularly called to the two steers and the marks and brands of each; that witness assisted in driving the herd a portion of the way to the loading pens.

The county attorney resisted this motion for a continuance, and introduced testimony tending to show that the witness had gone to the state of Idaho to remain permanently. The defendant introduced counter testimony to the effect that

the witness was in Idaho only temporarily and expected soon to return. Upon the showing the court announced that, if the county attorney would consent that the affidavit for continuance could be read as the testimony of the absent witness, the motion for a continuance would be overruled. To this ruling of the court the defendant objected and excepted. Thereupon the motion for a continuance was overruled and an exception allowed.

It has been often held by this court that the granting of a continuance is a matter that lies largely within the sound discretion of the trial judge. There is no affirmative showing in the record that the defendant had exercised proper diligence to procure the attendance of this witness, nor that, as a matter of law, the witness could be compelled to attend the trial at the next term of court. It would not, under these circumstances, have been an abuse of discretion for the trial judge to refuse a continuance, and since the trial court permitted the affidavit in support of the motion to be introduced in evidence as the testimony of the absent witness, the defendant will not be heard to complain.

The trial of criminal cases should not be delayed, except in cases where it is shown that due diligence has been used to procure the attendance of the witness; that the testimony is important and not merely cumulative; and that the witness can be procured at a subsequent term of court. Otherwise, it would lie within the power of defendants accused of crime to interminably delay and harass trial courts by repeated applications for postponements of trials.

On the question of the reception of incompetent and prejudicial testimony, with reference to declarations made by Doyle Freeman, a son of the defendant, who had not testified in the case, the record discloses the following, being a part of the testimony of the last witness called by the state:

Q.   What is your name?   A. Ernest Hill.

Q.   Are you the same Ernest Hill who took the stand and testified for the state this afternoon?   A. Yes, sir. * * *

Q.   Did the defendant, through his attorney, Mr. Anglin, make any statement to you as to whether or not he intended to use Doyle Freeman as a witness?   A. Yes, sir.

By Mr. Hall:   We object as incompetent, irrelevant, and immaterial.

By the Court:   He may answer.

By Mr. Hall:   Exception.

Q.   What did he say about it?

By Mr. Anglin: We object as incompetent, irrelevant, and immaterial.

By the Court:   He may answer.

By Mr. Anglin:   Exception.

A.   Well he told me to go to the prosecuting attorney and see if he was going to use me again this evening, and if not—

By the Court:   How is that?

A.   He told me to go to the prosecuting attorney and see if he was going to use me again this evening, and, if not, to get out of town, because he wanted to use that boy (Doyle Freeman).

Q.   Because he wanted to use this boy?

By Mr. Hall:   We object as incompetent, irrelevant, and immaterial.

By the Court:   He may answer.

By Mr. Hall: Exception.

A. Because he wanted to use this boy, Doyle Freeman, as a witness.

Q. Now, Mr. Hill, I will ask you if at your place shortly after the defendant, Sol Freeman, was arrested last fall, you were present and heard a conversation in which McAllen asked Doyle Freeman, "What do you suppose they will do with your pa about the Andy Sellars steer?" A. Yes, sir.

By Mr. Hall: We object as incompetent, irrelevant, and immaterial.

By the Court: Let him finish the question now.

By Mr. Hall: The witness answered the question before we had no opportunity to object.

Q. And if Doyle Freeman—

By Mr. Hall: We object for the further reason that the county attorney is attempting to get some matters before this jury here that the county attorney knows as well as I do is incompetent; and we now further object to questioning along this line which he is attempting to question.

By the Court: Overruled.

By Mr. Hall: Exception.

Q. And if Doyle Freeman didn't reply to that question, "They will sure stick him—"

By Mr. Hall: Now wait. We wish to object again to the question for the reason it is incompetent, irrelevant, and immaterial, and we ask that the jury be instructed not to consider the question, and we further ask the court to instruct the county attorney not to persist in questions of that kind, because he knows that it is incompetent.

The dialogue then continues at length, without any ruling. Later on the examination continues as follows:

Q. And if McAllen didn't ask the boy, "What do you suppose they will do?" to which the boy replied, "Yes; because he sure got the steer."

By Mr. Hall: Wait a minute. To which the defendant objects for the reason it is incompetent, irrelevant, and immaterial, and the question being asked by the county attorney only for the purpose of prejudicing the jury against the defendant in this case.

By the Court: The rule of law is that, if a witness repeats or knows anything about a party and refuses to tell it, the presumption is that he would not testify to anything favorable. Most courts instruct that when a case is up before a jury.

Concerning the admissibility of this testimony, the three-cornered dialogue continues at great length.

The correct rule as to the presumption arising where a party fails to introduce important testimony relating to facts within his knowledge and control, and peculiarly within his reach, is that such failure raises the presumption, open to explanation of course, that the testimony, if produced, would be unfavorable to him. 10 R. C. L. "Evidence," §§ 32 and 53; Crump v. State, 7 Okla. Cr. 535, 124 Pac.632.

It will be seen that the record here does not bring the evidence sought to be elicited from the witness Hill within the rule as stated above. The testimony sought to be elicited was wholly incompetent.

If it was within the power of the state to show that the defendant himself had attempted to suppress competent testi-

mony, or that the defendant corruptly induced a witness to absent himself from court to avoid danger of impeaching testimony later in the trial, such fact might be shown as affecting the interest and credibility of the defendant. If on the other hand, the defendant's attorney, in the absence of the defendant and without his knowledge or consent, induced a witness to absent himself from court, we think such action should not prejudice the rights of the defendant. The defendant himself might want all the facts bearing on the case fairly presented. If he should be so unfortunate as to have an attorney who, to win his case, committed a crime by prostituting his high office as an attorney by illegally suppressing testimony without the consent of his client, for that the defendant should not be held accountable. An attorney, like other agents, binds his principal only within the scope of his authority. There can be no implied power given to an attorney by his client to violate the penal laws of the state. Section 2258, R. L. 1910, makes the suppressing of evidence a misdemeanor.

The most serious objection to this testimony is that the jury were permitted to hear a statement that the son of the defendant had made a declaration to a third person that his father was guilty; that this third person asked him the question, "What do you suppose they will do with your pa about that Andy Sellars steer?" and that the boy replied, "They will sure stick him, for he sure got the steer." Where the competent evidence before the jury was nearly balanced, as in this case, it may be that the knowledge gleaned from this dialogue turned the scales against the defendant. Indeed, the jury may have based this verdict solely on the alleged statement of this boy to the effect that the father was guilty. The fact that the jury were engaged in deliberation upon the evidence

about 60 hours before agreeing upon a verdict confirms this view.

Where the proffered testimony indicates that it may be incompetent, and, if incompetent, probably prejudicial, it is the better practice for the court, on his own initiative or at the request of the objecting party, to have the jury retire while the competency of the proffered testimony is being discussed. Roddie v. State, 19 Okla. Cr. 63, 198 Pac. 345; Beason v. State, 18 Okla. Cr. 388, 195 Pac. 792; Hawkins v. U. S., 3 Okla. Cr. 651, 108 Pac. 561; notes to 100 Am. St· Rep. 689.

True, in the course of the long and heated argument the court admonished the jury as follows:

"Gentlemen of the jury, that is not for your consideration. You can see that the attorneys and the court are arguing the rule on a proposition, and the attorneys are a little forcible to the court, and you will not consider any remarks of the court, unless addressed to you, and if it is competent."

And at another time the court addressed the jury as follows:

"I will tell you again, gentlemen, that the remarks of the court are not intended for your consideration, but intended for the attorneys, to show my rule of law upon that proposition."

But this prolonged discussion, including these admonitions of the court, operated to emphasize rather than minimize the impression conveyed to the jury that the son had confessed that his father was guilty, and that therefore he doubtless was guilty. This deduction is almost irresistible, and such damaging statements should not be offered by either party under the guise of making proof of some collateral issue of doubtful competency, or by any other method. This method of conveying incompetent and prejudicial facts to a jury is some-

times appropriately term "badgering in" testimony. In our opinion, this part of the proceedings amounted to prejudicial error. Porter v. State, 8 Okla. Cr. 64, 126 Pac. 699; notes and annotations, 100 Am. St. Rep. 689.

As before stated, the testimony for and against the defendant appears about evenly divided, but this court has often held that where there is substantial evidence supporting the verdict it will be upheld. Ordinarily, this court will not substitute its judgment as to the weight of the testimony for the judgment and findings of fact of the jury.

For the reasons stated under the second assignment of error, as herein treated, this cause is reversed and remanded.

DOYLE, P. J., concurs.

MATSON, J., not participating.