# WILLIAM STUART v. STATE.

No. A-5858.    Opinion Filed Sept. 15, 1926.
(249 Pac. 159.)

104

Hargis & Yarbrough and L. G. Williams, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Osage county on a charge of murder and sentenced to life imprisonment.

W. W. Chastain was shot and killed on Sunday, February 1, 1926, between 10:30 and 11 a. m., while riding a horse on the public highway between Wynona and Hominy. It was evident that the horse ridden by Chastain came to a sudden stop, and deceased was pitched over the head into the road. He was seen but a few minutes before that riding in a lope. One Adams, traveling in an automobile, discovered the body. The shot which caused death was from a thirty-two caliber gun, the bullet entering the body in the front of the right side, ranging upward, indicating that the shot was fired by someone on the ground. Defendant on the date of the homicide was engaged in walking a pipe line, and, on this day, left his home about 7 or 7:30 for this purpose and went to the south end to walk north. He was at the house of the witness Myers on this morning and left about 10:20 to walk the pipe line. While at Myers' house, he made statements indicative of hostility toward

deceased. Another witness, Cates, immediately after he heard a shot or shots fired, saw some person whom he rather indefinitely identified as defendant, run from the scene of the shooting toward defendant's home. There were several other circumstances tending to connect defendant with the homicide. The defense was an alibi.

Various assignments of error are argued in the brief. They may be summarized as follows: First, that the verdict is not supported by the evidence; second, the admission of incompetent and immaterial evidence; third, the exclusion of competent evidence offered by defendant; fourth, error in the court's instructions. These assignments will be considered in the order named.

Upon the first assignment it is contended that, since the evidence is entirely circumstantial, it is not sufficient to exclude every reasonable hypothesis except the guilt of the defendant. It is admitted that there is some evidence that the defendant was seen going toward the scene of the homicide a short time prior to the time of the shooting, and was seen leaving the scene of the shooting shortly thereafter; that footprints near the body were similar to footprints found near defendant's home; that the footprints in question were made by someone wearing rubbers, and a pair of rubbers were seen at defendant's home a few days later; that defendant had had a misunderstanding with deceased and had made threats against him; that some 2 months before the homicide one of defendant's sons had a pistol of the same caliber as that with which deceased was killed, and some shells of the same caliber were found at defendant's home not long after the shooting. The defendant contends that the evidence touching these various points is conflicting and inconclusive, that the proof is not of that positive character required to support a verdict resting entirely on circumstantial evidence, and in several particulars rests upon incompetent evidence. It has been held often

by this court that, where the evidence is wholly circumstantial, the circumstances must be consistent with the guilt of the accused and inconsistent with his innocence, and that they cannot be regarded as sufficient when they are of such a character as to fairly permit an inference consistent with innocence. England v. State, 29 Okla. Cr. 38, 231 P. 1087; Tomlinson v. State, 27 Okla. Cr. 429, 228 P. 608. Passing for further consideration the competency and materiality of the evidence, we believe that the evidence introduced was sufficient on the facts to carry the case to the jury and to sustain the verdict.

Under the second assignment—i. e., the admission of incompetent and immaterial evidence—numerous specifications are set out. Complaint is first made of the admission of the testimony of Arthur Tribble, a boy 6 years of age, on the ground that this witness is not shown to be competent, under the provisions of section 589, Comp. St. 1921. The material part of this section is:

"The following persons shall be incompetent to testify: * * * Second: Children under 10 years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly. * * *"

This statute has been considered by this court in the following enlightening cases; Adams v. State, 5 Okla. Cr. 347, 114 P. 347; Walker v. State, 12 Okla. Cr. 179, 153 P. 209; Darneal v. State, 14 Okla. Cr. 540, 174 P. 290, 1 A. L. R. 638 (note) Siegler v. State, 11 Okla. Cr. 131, 145 P. 308; Barker v. State, 33 Okla. Cr. 25, 242 P. 274.

In the latter case a child 6½ years old was held competent to give testimony. The competency of a witness is a matter addressed to the sound discretion of the trial court. It is a mixed question of law and fact to be determined by the trial court upon an examination of the witness. The cases in considering this question frequently discuss the

knowledge of the witness of the sancity or significance of an oath, his knowledge of God, or a belief in future rewards and punishments. This is not the test fixed by the statute. The statute rejects the witness "under 10 years of age who appears incapable of receiving just impressions of the facts concerning which they are examined, or of relating them truly." Measured by this test, the testimony of this witness is clear, direct, and indicates that the witness received just impressions of the simple facts he testified to, that he clearly comprehended the questions asked, and answered them truthfully. It is not made to affirmatively appear that he is incompetent. We see no reason to disturb the ruling of the trial court on this point.

It is also urged under this assignment that the court admitted evidence of several witnesses that they had not seen defendant at any other place on the morning of the homicide. This evidence was negative in character and at the time admitted was not particularly material but was proper to have been given in rebuttal. As heretofore stated by this court, however, it would require an unusual state of facts to constitute material error on account of the order in which competent evidence introduced.

It is also urged that evidence of the action of a son of the defendant in the presence of persons at the house of defendant in the absence of defendant was incompetent and prejudicial. This was no part of the res gestae; it was incompetent, and not binding on defendant. The jury may have taken it as evidence that the son knew of the guilt of his father.

The witness Pyle was permitted to testify over the objections that certain footprints near the body were made by the same shoe that made tracks near defendant's residence, as follows:

"Q. You say you found some tracks leading away from this place? A. Yes, sir.

"Q. Were they made by the same shoe that made the tracks leading up to the highway? * * *

"The Court: Yes, sir.

"By Mr. Hall: If you know. * * *

"A. Yes, sir, made by the same shoe. * * *"

Unless the matter is one calling for expert testimony, it is the province of a witness to state facts, not conclusions. The admission of conclusions, before the witness has shown his qualifications in making observations or tests, is error. Heidelbaugh v. State, 79 Neb. 499, 113 N. W. 145.

The witness Lewis was permitted to testify to a conversation with Dewitt Stuart, a son of defendant, in the absence of defendant. A part of this testimony is as follows:

"Q. Did you have any conversation with Dewitt (Mr. Stewart's son) since that time about a .32 automatic pistol, or did he with you? * * * A. Yes, sir. * * *

"By Mr. Templeton: You say you did have? A. Yes, sir.

"Q. About how long after Chastain was killed was this? * * * A. Well, I could not tell you about how long it was, it was somewhere about the time they had Dewitt in jail down at Hominy and he got out. * * *

"Q. What did he say to you about a .32 automatic pistol? * * * A. He tried to get me to swear that I was the one that he sold the pistol to during—

" * * * A. He tried to get me to swear that I was the one he sold a .32 automatic pistol to during Thanksgiving time; see? * * *

"By Mr. Templeton: What, if anything, did he say as to whether or not he had a pistol at that time, Charley? * * * A. He said that if he could get me to swear that I was the one he sold the gun to, to get him out of jail, so that would clear him from jail. * * *

"By Mr. Templeton: What did he say about produc-

ing a gun at that time? * * * A. He said that if he could get a fellow, see, that—could get me to swear that I was the one he sold the gun to, that would let him out of jail, provided he could get me, provided he could not find the fellow he sold the gun to. * * *

"By Mr. Templeton: What, if anything, did he say to you about being able to produce a gun if you would testify to that? * * *

"Q. I will ask him a question again: Charlie, did he tell you he could produce this gun if you would testify to that, or did he tell you he could not? * * *

"By Mr. Templeton: What did he say as to that? A. He said he could produce a gun. * * *"

In substance, this testimony is that Dewitt Stuart endeavored to get the witness to swear falsely that he had purchased a thirty-two automatic from Dewitt Stuart prior to the homicide. Dewitt Stuart was not a witness in the case. No connection or knowledge of this attempt of Dewitt Stuart to procure this testimony, if it took place, was proven against defendant. The evidence was incompetent and prejudicial. Cecil v. Territory, 16 Okla. 197, 82 P. 654, 8 Ann. Cas. 457; Bruner v. U. S., 1 Okla. Cr. 205, 96 P. 597; Williams v. State, 10 Okla. Cr. 348, 136 P. 778; Satterfield v. State, 31 Okla. Cr. 309, 238 P. 868.

It is also argued that the trial court permitted witnesses for the state to testify that the reputation of defendant, as a law-abiding citizen, was bad. The defendant offered evidence of good reputation. The state in rebuttal offered evidence that his reputation was bad. The witnesses were asked as to the reputation of defendant, not as to his general reputation. This, it is contended, was error. The impeachment of a witness by showing bad character should be as to his general reputation and not reputation merely. State v. Frederickson, 81 Kan. 854, 106 P. 1061; Watson v. State, 181 Ala. 53, 61 So. 334.

Here, however, it is obvious that while the questions

were of reputation and did not specify general reputation, yet it is apparent that general reputation was meant, and, while the court should have limited the qualification of the witness in proper form to general reputation, yet, we think, the failure to do so was not material error. Defendant's counsel, if they saw fit upon cross-examination, might have fully tested the knowledge of the witnesses.

Upon the third assignment—i. e., the exclusion of competent and material evidence offered by defendant—the defendant sought to show that the witness Cates, who testified in substance that he saw defendant leaving the scene of the shooting soon after it occurred, did not positively identify defendant, and that the testimony in the preliminary was different from that in the trial. Upon this point a colloquy in the presence of the jury between the court and counsel for defendant took place:

"The Court: What is your offer?

"Mr. Hargis: I offer to prove that the answer to that question was: 'No, I didn't recognize the man right at the present moment.'

"The Court: Well, you cannot prove it by this record because that is not here.

"Mr. Hargis: Your honor, I am now asking her—

"The Court: You are offering to prove by this record and the record does not so show.

"Mr. Hargis: I apprehend that in this matter the witness ought to be permitted to answer or not to answer, one of the two, and that the court or counsel should not say what the record shows, and then one of them say what it does show, and one to say what it does not show.

"The Court: No, sir, you offered to prove a certain thing by this record, and that record does not show what you offer to prove, I say, so the offer is not true. * * *

"The Court: What is it you are offering to prove?

"Mr. Hargis: Just exactly what I quoted, that the

answer would be: 'No, I didn't recognize the man at the present time;' I am offering to prove that by this witness. * * *

"The Court: I sustained the objection, and then as I understand you, you offer to prove a certain thing that the witness would not answer to a certain thing; now the record here does not show that she would testify to what you offer to prove.

Mr. Hargis: Your honor is ruling in one breath that the witness is not competent—

"The Court: I will hold that you cannot even offer to prove the thing you said.

"Mr. Hargis: Your honor, I will have to disagree with the court, and of course the court will rule out my offer; I am seeking to make this record, and if your honor excludes me from making that proof, then we will make an offer in order to preserve the record.

"The Court: That is what I want you to do, but not to make an offer of something that is not true. * * *'"

A colloquy of this character was out of place in the presence of the jury. It might be construed by the jury as a statement by the court that the offer of proof was of evidence which was not true. Evidence that the witness at the preliminary testified differently, if a proper predicate was laid, was competent as impeaching evidence. Where testimony is excluded, it is improper to state in the presence of the jury an offer of proof, but if permitted to be stated, it is improper for the court to comment on its truthfulness.

It is also contended that the court erred in instruction No. 10. This instruction is upon the law of circumstantial evidence; no complaint is directed to it except the concluding sentence, which is: "The law makes no distinction between direct evidence of a fact or circumstances from which the existence of a fact may be inferred." In the abstract this is true; the instruction taken as a whole is not subject to the criticism directed against it. This court on numerous

occasions has approved instructions upon circumstantial evidence, and the substance of the law as there stated should be closely adhered to. Howard v. State, 2 Okla. Cr. 200, 101 P. 131; Carter v. State, 6 Okla. Cr. 232, 118 P. 264.

Complaint is also made of the court's instruction No. 11, stating the law of alibi. This instruction correctly states the law until the concluding part where the jury are told that if they entertain a reasonable doubt as to "whether defendant was in such other place" at the time of the alleged commission of the crime, then they should give him the benefit of the doubt and acquit him. This was error. Buck v. Territory, 1 Okla. Cr. 517, 98 P. 1017; Thompson v. State, 6 Okla. Cr. 50, 117 P. 216; Courtney v. State, 12 Okla. Cr. 169, 152 P. 1134; Davis v. State, 17 Okla. Cr. 604, 191 P. 1045. The instruction should have informed the jury that if they had a reasonable doubt as to whether defendant was at the place of the crime, then the defendant should have been given the benefit of the doubt and acquitted. We recommend the following as a correct form of instruction on the law of alibi:

"The defendant has interposed in this case as one of his defenses what is known in law as an alibi. That is, that the defendant was at another and different place at the time of the commission of the crime charged. The law is that such a defense is proper and legitimate and the jury should consider all of the evidence bearing upon this point whether introduced by the state or the defendant, and if after a careful consideration of all of the evidence in the case the jury entertain a reasonable doubt as to whether the defendant was present at the time and place where the crime was committed, if it was committed, then and in that event the jury should give the defendant the benefit of the doubt and acquit him."

In considering the record presented, none of the errors pointed out, standing alone, except possibly the error in admitting the overture to procure false testimony by De-

witt Stuart, would require a reversal. The various errors taken all together are such that we find defendant did not have that fair trial which the law guarantees.

The case is, therefore, reversed and remanded.

The warden of the penitentiary will surrender the plaintiff in error to the sheriff of Osage county, who will hold him in custody until he shall be discharged, or his custody changed by due course of law.

BESSEY, P. J., and DOYLE, J., concur.