# WALTER YODER v. STATE.

No. A-9490.   May 12, 1939.
(90 P. 2d 669.)

Reily & Reily, of Shawnee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, P. J. The information in this case, filed in the district court of Seminole county, July 8, 1937, charged the larceny of a red cow, belonging to Ray Bowlen, alleged to have been committed in said county on or about the 23rd day of September, 1935. Upon his trial the jury found the defendant guilty of larceny of a domestic animal, but were unable to agree as to the punishment. Motions for new trial and in arrest of judgment were duly filed and on November 10, 1937, overruled. The judgment and sentence of the court was that the defendant serve a term of 2 years imprisonment in the state penitentiary.

Among the various assignments of error is one, the consideration of which must result in a reversal of the judgment, to wit: "Error of the court in admitting incompetent and prejudicial testimony in behalf of the state."

As a witness for the state, H. E. Bowlen, father of Ray Bowlen, owner of the cow alleged to have been stolen, was permitted to testify over the objections of the defendant

that W. W. Yoder, father of the defendant, attempted to induce him by the payment of money to persuade his son to compromise the case and have it dismissed.

The record discloses the following, being a part of the testimony of the witness, H. E. Bowlen:

"Q. Do you know W. W. Yoder? A. Yes, sir. Q. Did you see him a few days after this alleged cow being stolen? A. Yes, sir, the next day. Q. Where did you see him? A. In the cane field. Q. What were you doing with your cane? A. Cutting it. Q. What time of the day was it? A. I would judge it was about eight or eight thirty. In the morning. Q. I will ask you if Mr. W. W. Yoder didn't ask you how much it would take to have your boy dismiss this case? A. Yes, sir. By Mr. Reily: Just a minute, Mr. Witness. We object to that as incompetent, irrelevant and immaterial and not binding on the defendant, highly prejudicial, something had in his absence and no showing that this man was his agent. By the Court: I am admitting it for impeachment purposes only and it is not binding on the defendant. It might affect the credibility of the witness W. W. Yoder, that is all it is admissible for. By Mr. Crump: We ask the court to instruct the jury for what purpose it is admitted. By the Court: I imagine the jury heard what I said. I said, Gentlemen, I am admitting this testimony purely and only as to the credibility of the witness W. W. Yoder. By Mr. Reily: Note our exception. Q. And I will ask you if you didn't tell him that he couldn't buy you at all? By Mr. Reily: Now, we object to that— By the Court: Sustained. By Mr. Reily: We ask the court to direct the jury not to consider that question. It wouldn't be binding on the defendant. By the Court: I have stated that it is not binding on the defendant, but is just for the purpose of impeachment. By Mr. Reily: We ask the court to admonish the jury not to consider the question. By the Court: Overruled. By Mr. Reily: Exception."

This witness, W. W. Yoder, denied making any such offer to the state's witness, H. E. Bowlen.

On cross-examination of W. W. Yoder, the following questions were asked, and statements made in the presence of the jury by Mr. Crump, special prosecutor:

"Q. Didn't he tell you, while your boy was pitching ball, running around stealing cattle—(interrupted) By Mr. Reily: Objected to and ask that the jury be instructed not to consider it— it is not an impeaching question. By the Court: Sustained. By Mr. Crump: I want to show he offered him money and asked him how much he would take to get his boy to dismiss this case and that Mr. Bowlen told him he was a poor man, and said, 'You know damn well your boy stole that cow'; 'Well,' he says, 'he is my boy and I want to get him out of it if I can,' and he says 'While your boy was out pitching ball, going around stealing cattle, my boy was working to get money to pay the mortgage off.' By Mr. Reily: To which we object on the ground it is incompetent, irrelevant and immaterial. By the Court: Sustained, it is not binding on the defendant at all, and prejudicial. By Mr. Reily: I move the court to admonish the jury not to consider that question and answer, on the ground it is incompetent, irrelevant and immaterial and not binding on the defendant and hearsay so far as the defendant is concerned. By the Court: Overruled. By Mr. Reily: Exception."

We have carefully examined the record and fail to find any evidence to connect the defendant with the negotiations of the father, if any were had. We think this testimony was incompetent and prejudicial to the rights of the defendant. There can be no doubt that its admission was prejudicial error.

In the case of Williams v. State, 10 Okla. Cr. 348, 136 P. 778, 779, wherein the defendant was charged with the theft of a heifer, the witness for the state was permitted to testify that the defendant's father offered to pay him $50 to testify in favor of the defendant. There was no proof tending to show such offer to pay the witness was made by the authority, consent or knowledge of the defendant. The court, overruling the motion to strike out this testimony, said:

"This man being the father of the defendant, I will let it stay in.

"Held, that the evidence was incompetent and inadmissible and was calculated to prejudice the defendant,

and that the erroneous rulings of the court constitute reversible error."

In the case of Cecil v. Territory, 16 Okla. 197, 82 P. 654, 8 Ann. Cas. 457, the Supreme Court of Oklahoma Territory held:

"In a case for rape, evidence of negotiations for a settlement of the crime, by way of offers by the defendant to pay money to the prosecutrix or her parents are always relevant against the defendant; and where such negotiations are carried on by the father of the defendant, or by others, in order to make such evidence admissible against the defendant, the territory must show that the father of the defendant, or the other parties acting, were acting for the defendant and by his direction and authority."

In the opinion it is said:

"The old man seems to have been prompted by that parental affection which causes the parent at all hazards to save the wayward son even from just and merited punishment. When viewed as the act of an affectionate old father, under such circumstances, it touches a cord of human sympathy. But when you come to view his acts as prompted by the son, it at once becomes incriminating circumstance of much weight, pointing to the guilt of the defendant."

In the case of Stuart v. State, 35 Okla. Cr. 103, 249 P. 159, this court held:

"Evidence of an overture by some person other than defendant to procure a witness to testify falsely in defendant's behalf is incompetent, unless there is some proof of authority, consent, or knowledge of the defendant of such attempt." Bruner v. U. S., 1 Okla. Cr. 205, 96 P. 597; Satterfield v. State, 31 Okla. Cr. 309, 238 P. 868.

In the case of Freeman v. State, 20 Okla. Cr. 443, 203 P. 1052, this court held:

"Damaging and clearly incompetent statements of fact, to the effect that the son of the defendant, who had not been called as a witness, had confessed that his father was guilty, should not be permitted in the presence of the jury."

In the opinion it is said:

"This deduction is almost irresistible, and such damaging statements should not be offered by either party under the guise of making proof of some collateral issue of doubtful competency, or by any other method. This method of conveying incompetent and prejudicial facts to a jury is sometimes appropriately termed 'badgering in' testimony. In our opinion, this part of the proceedings amounted to prejudicial error."

It follows from what has been said that the defendant did not have that fair and impartial trial to which he was entitled.

Another assignment is that the court erred in overruling the defendant's verified motion to dismiss the case, on the ground that said defendant was charged in the superior court of Seminole county with the larceny of the same cow that he is charged with in this action, which action in the superior court was dismissed for insufficiency of evidence by the county attorney with the approval of the judge of the said superior court, upon the payment of the court costs by the said defendant.

The question involved is whether this case should be remanded for a new trial or with direction to dismiss.

In the motion to dismiss, or plea of former jeopardy, it is alleged:

"That on the 3rd day of January, 1936, Tom Huser, the then county attorney of Seminole county, Okla., filed in the superior court of said county in cause No. 395, an information charging the defendant with the larceny of the same red cow that he was now informed against in the district court.

"That thereafter the defendant was tried in the said superior court and the jury was unable to agree on the guilt or innocence of the defendant. That on the 15th of April, 1936, the said Tom Huser, by and through his assistant, R. E. Criswell, at the suggestion and with the approval of the judge of the superior court, agreed with

the defendant that if he would pay the cost of the prosecution in the superior court, that the said prosecution would be dismissed. That in pursuance to said agreement, the said defendant, on about the 15th day of April, 1936, complied with his portion of the agreement and paid the accrued costs in the case, and that on the same day Tom Huser, the then county attorney of said county, by and through his assistant, R. E. Criswell, with the approval of the superior judge, duly filed a written dismissal in the office of the court clerk of the said county.

"That thereafter, and on the 23rd day of February 1937, a complaint was filed before the justice of peace in Seminole county by Hubert Hargrave, county attorney of Seminole county, charging said defendant with stealing the same red cow belonging to Ray Bowlen. That the act complained of and the cow that was the subject of such alleged larceny was the same cow that he was charged with stealing in the superior court in cause No. 595.

"That the said defendant was bound over to the district court on the said complaint. That the agreement made between the county attorney and the defendant with the approval of the superior judge of Seminole county, Okla., to dismiss the case upon the payment of cost was made in good faith and that the state is now estopped to maintain the prosecution for stealing the identical cow. That the district court of Seminole county, Okla., should not permit the state to prosecute the defendant in violation of the agreement as aforesaid."

At the hearing on the motion upon the issue of former conviction or jeopardy, J. J. Hill, deputy court clerk of Seminole county, testified that in said case No. 395, following the discharge of the jury, Judge Cutlip, judge of the superior court, directed the then county attorney, R. E. Criswell, to dismiss the prosecution, if the defendant would pay the costs, and that the court cost was paid on April 15, 1936, and the dismissal filed on the same date.

It was stipulated by and between the attorneys for the defendant and the state, that the animal with which the defendant was charged in the superior court with stealing,

case No. 395, was the identical animal with which he was now charged with stealing in the district court.

At the close of the hearing, the court overruled the motion or plea in bar. Exceptions allowed.

One of the grounds of the motion for new trial was error in overruling the plea of former jeopardy. The question was again presented in the motion in arrest of judgment, with exceptions reserved.

The record affirmatively shows that the judgment or order of said superior court was not reconsidered, set aside or modified at any time during the term at which it was rendered, and more than a year had elapsed before the information in this case was filed in the district court.

The question presented has been fully considered and answered by this court in the case of Rupert v. State, 9 Okla. Cr. 226, 131 P. 713, 714, 45 L.R.A., N.S., 60. The language of that opinion is as follows:

"The general power of a court to reconsider its judgment and sentence and reverse, vacate, or modify it at any time during the term in which it was rendered, or to increase or diminish the sentence which it has imposed, where the original sentence has not been executed or put into operation, is undeniable. Bish. New Crim. Proc. § 1288, and cases cited. This power is inherent in all courts of record. However, it would seem there must, in the nature of the power thus exercised by the court, be in criminal cases some limit to it. It is clear that a court cannot pass two sentences for the same offense, to be enforced at the same time. And the validity of a second judgment and sentence must be because the first judgment and sentence is legally annulled or revoked and made void.

"That no person shall be twice put in jeopardy for the same offense is a universally accepted principle of the common law, and this principle has been embodied in the federal Constitution and in all state Constitutions, and it is incorporated in the Constitution of the state of Oklahoma by express provision, as follows:

" 'Nor shall any person be twice put in jeopardy of life or liberty for the same offense.' Section 21, Bill of Rights.

"Jeopardy, in its constitutional or common-law sense, has a strict application to criminal prosecutions only. The word 'jeopardy,' as used in the Constitution, signifies the danger of conviction and punishment which the defendant in a criminal prosecution incurs when put upon trial before a court of competent jurisdiction under a valid indictment, information, or complaint, and in this use it is applied only to strictly criminal prosecutions. Stout v. State, 36 Okla. 744, 130 P. 553 [45 L.R.A., N.S., 884, Ann. Cas. 1916E, 858].

" 'A person is not in legal jeopardy until put upon trial before a court of competent jurisdiction under an information or indictment sufficient in form and substance to sustain a conviction.' Cooley, Const. Lim. (7th Ed.) 467, and cases cited.

"We think this provision of the Bill of Rights, and the principle therein declared, is broad enough to mean that no person can be twice lawfully punished for the same offense. The one follows from the other, and this constitutional provision is designed and intended to protect the accused from a double punishment as much as to protect him from two trials. For this reason we think that where a judgment and sentence has been executed and satisfied that ends the prosecution, exhausts the power of the court, and terminates its jurisdiction, and the court is without power or jurisdiction to render another judgment and sentence in the case.

"The leading case upon this question is Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872. In that case the defendant was convicted of appropriating mail bags, of the value of less than $25, the punishment for which offense, as provided by statute, was imprisonment for not more than one year or a fine of not less than $10 or more than $200. The sentence was one year's imprisonment and $200 fine. The defendant was committed in pursuance of the sentence and paid the fine the day after his commitment. On the second day after his commitment he was brought by habeas corpus before the same judge who sentenced him, who vacated the former judgment and

sentenced the defendant anew to one year's imprisonment. The case came before the Supreme Court of the United States on habeas corpus, and the defendant was discharged, on the ground that, where a statute imposes as a punishment a fine or imprisonment, and the court has both fined and imprisoned the defendant, who thereupon pays the fine, the court has no power, even during the same term, to modify the judgment by imposing imprisonment instead of the former sentence. One of the alternative requirements of the statute having been satisfied, the power of the court as to the offense was at an end."

And see Ex parte Strader, 37 Okla. Cr. 285, 257 P. 1112.

In the case of Loyd v. State, 6 Okla. Cr. 76, 116 P. 959, 961, it is said:

"A few authorities do hold that a verdict of acquittal or conviction must have been rendered before a former trial can be pleaded in bar of a second prosecution for the same offense. But the Constitution of this state in mandatory terms deprives us of the power to adopt the reasoning of these cases. The latter clause of section 21, of article 2, of our Constitution puts this question at rest as follows: 'Nor shall any person be twice put in jeopardy of life or liberty for the same offense.' It does not say that no person shall be tried twice for the same offense, but the language is unequivocal to the effect that no person shall twice be put in jeopardy for the same offense. The word 'jeopardy' has a clearly defined and fixed legal meaning, and that meaning is that when a person has been put in danger of a conviction, that this is jeopardy, and that it attaches whenever a defendant is placed upon a trial in a court of competent jurisdiction, upon a valid indictment or information, and a jury has been duly impaneled and sworn. This matter is so well settled and the authorities above stated are so conclusive that it would be a useless consumption of time for us to discuss the question further. It is enough for us to know that in such cases our Constitution forbids a second prosecution for the same offense, where jeopardy has attached upon the first prosecution."

Under the provisions of Procedure Criminal (sec. 3166, 28 Okla. St. Ann. § 101) "all costs in the prosecution of all

criminal actions shall in case of conviction of the defendant be adjudged a part of the penalty of the offense of which the defendant may be convicted." And the payment of such fine and costs shall be enforced by imprisonment until the same shall be satisfied, at a rate of $1 per day of such fees and costs.

In Ex parte Autry, 58 Okla. Cr. 88, 50 P. 2d 239, 240, held that:

"Under section 3166, St. 1931, the payment of costs of the prosecution is made a part of the punishment, and that payment shall be enforced by imprisonment in the county jail until the same shall be satisfied."

In the case of Ex parte Wagner, 58 Okla. Cr. 161-168, 50 P. 2d 1135, 1139, we say:

"The power of the court to order a defendant adjudged to pay a fine and costs is not confined to cases where a fine only is imposed, but also extends to cases where both confinement and a fine are imposed as a punishment and includes the power to add to such fine the costs of prosecution."

It follows from the foregoing review of the record, the authorities quoted, and the laws, that after the defendant had complied with the agreement to dismiss the prosecution by paying into court all costs in the prosecution of the case, and satisfied the order and judgment, the superior court was without jurisdiction to render a second judgment and sentence upon the same charge, or to reconsider its order or judgment after the costs had been paid, as in this respect the power of the court must be exercised when the original judgment is rendered.

It goes without saying that the district court, exercising a co-ordinate jurisdiction in said county, was without jurisdiction to try an information for the same offense, subsequent to the order and judgment of the superior court having been satisfied.

190

For the reasons stated, the judgment of the district court of Seminole county herein must be reversed and the case remanded with direction to dismiss. It is so ordered.

BAREFOOT and DAVENPORT, JJ., concur.