Michael NEWBURY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–82–672.

Court of Criminal Appeals of Oklahoma.

Jan. 2, 1985.

As Corrected Jan. 4, 1985.

Rehearing Denied March 8, 1985.

---

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

### OPINION

BUSSEY, Presiding Judge:

Michael Newbury was sentenced to life in prison for the First Degree Murder of fifteen-year-old Janella Garrett. We affirm.

The victim disappeared from a home in Marshall, Oklahoma, sometime between 9:30 and about 10:30 P.M. on the evening of August 27, 1981, while babysitting a four-year-old girl and the little girl's ten-month-

old brother. Her body was found south of Marshall the next day. It was undisputed that the appellant had been at the house on the evening in question installing pay television equipment.

The father of the children being cared for by the victim was working that evening at a small grocery in Marshall. The appellant went to the grocery store between 9:15 and 9:30 P.M. to pick up a check for the work. As he was leaving the store, he asked the father how much longer he would remain at the store; the man indicated that he would not be much longer.

The victim spoke with her mother by telephone at about 9:30 P.M., saying that no matter what happened, she loved her mother. Due to recent family difficulty, the mother thought nothing of the remark. When the father of the children finally arrived home at about 10:30 P.M., the two small children were asleep in a single crib, which was strange, and the victim was gone. There was some evidence that appellant's vehicle was seen back at the residence after the appellant had picked up the check for the work, contrary to appellant's statements and testimony.

When the four-year-old child awoke the next morning, she told her mother that the babysitter had left with "the television man." The victim's body bore numerous slashes, bruising about the torso and serious head injuries, including a depressed skull fracture consistent with a blow from a hammer. Her clothing was also disarranged.

Human hair microscopically similar to the victim's was found in the cab and wheel well of appellant's pickup truck. Human blood was found on his work knife and the bumper and bed of his pickup truck. The blood on the bumper possessed characteristics consistent with the victim's blood type. Blood was also found on a hammer in a tool box in appellant's pickup, but the quantity was too small for determination of species.

Sperm found in the victim's vagina contained an antigen secreted by appellant, and could have come from appellant's body.

Tire tracks at the location of the body were similar to the tires on appellant's pickup truck. Fresh oil spots in the same area were consistent with excessive engine oil on the underside of appellant's engine. Wire fragments found in the victim's under garment matched wire found in the appellant's pickup.

Appellant testified that after picking up payment for the installation of the television equipment, he started for home in Oklahoma City. He stated that he stopped along the way in Crescent, Oklahoma, for a snack, and arrived home at about 11:00 P.M. His arrival time was corroborated by other defense evidence. Appellant's wife testified that she cut her hand several days after the victim's disappearance, and bled on the pickup. However, a state's investigator testified that blood was visible on the bumper of the vehicle prior to the time of the wife's alleged injury. An investigator also testified that it took at most sixty-two minutes to drive from the crime scene to the appellant's Oklahoma City residence in his vehicle.

The State sought the death penalty, but the jury assessed punishment at life in prison.

As his first assignment of error, appellant contends that the trial court erred in allowing into evidence fourteen photographs of the corpse. He argues that since the defense was alibi, the only contested issue was the identity of the perpetrator, and the pictures were without probative value on that issue.

 This contention is without merit. In every criminal prosecution, it devolves upon the State to prove, first, the corpus delicti, and, second, that the crime was committed by the accused. *Leeks v. State*, 95 Okl.Cr. 326, 245 P.2d 764 (1952). Pictures of the murder victim are always useful in establishing the corpus delicti of the crime. *Selsor v. State*, 562 P.2d 926 (Okl. Cr.1977). Moreover, the prosecution's theory was that the appellant struck the victim on the head with a hammer, slashed her body with a knife, and ran over her in a pickup truck. The photographs were pro-

bative of wounds to the head, cuts about the body, and bruising on the torso consistent with the State's theory. Coupled with evidence of blood and hair on the accused's knife, hammer and pickup, they were relevant on the issue of identity. Despite some repetition, we find no abuse of discretion in their admission.

■ Appellant further contends in this regard that the State improperly introduced a photograph of the victim in life, taken about two months before the crime. This Court does not encourage the use of "before" photographs in homicide cases. *Smith v. State*, 650 P.2d 904, 910 (Okl.Cr. 1982), Note 10. See also, *Boutwell v. State*, 659 P.2d 322 (Okl.Cr.1983). The emotional effect of such pictures may be the same as gruesome death photographs. *Franks v. State*, 636 P.2d 361, 366 (Okl.Cr. 1981). Even where relevant for some proper purpose, we have cautioned prosecutors to first explore alternative forms of proof which involve less danger of prejudice. *Smith v. State*, supra, 650 P.2d at 910, Note 10.

We are of the opinion that the photograph should not have been permitted into evidence. However, the error was not reversible standing alone under all the circumstances of this case. *Smith v. State*, supra.

Appellant next contends that the trial court erred in permitting into evidence the hearsay statements of the four-year-old girl that the victim had left with the television man.

When the children's father returned home on the evening in question and discovered the babysitter missing, the little girl was sleeping. She slept soundly throughout the night. The trial judge ruled the child incompetent as a witness due to immaturity, after a hearing. However, he permitted evidence of statements by the little girl to her mother the next morning and to her father the next afternoon to the effect that the victim left with "the television man."

The parties agree that the statements were hearsay. The trial judge admitted them under one of the residual hearsay exceptions. See, 12 O.S.1981, § 2804(B)(5). Appellant contends that the use of the statements violated both the hearsay rule and the confrontation clauses of the state and federal constitutions.

We find that the child's statement to her mother the morning after the disappearance of the babysitter was admissible as an excited utterance, 12 O.S.1981, § 2803(2), and did not offend the confrontation clause.

■ We may sustain the admission of hearsay on a theory not relied upon by the trial court, since

[t]he government ordinarily is not barred from seeking affirmance on the basis of an exception to the hearsay rule other than that specified at trial, provided that the alternative basis for admission finds support in the record. *United States v. Lieberman*, 637 F.2d 95, 103 n. 11 (2d Cir.1980).

*United States v. Yakabov*, 712 F.2d 20, 23 (2d Cir.1983), Note 3. See also, *People v. Lopez*, 110 Ca.App.3d 1010, 168 Cal.Rptr. 378 (1980). Title 12 O.S.1981, § 2803(2) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

2. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition;

As stated by this Court in *Johnson v. State*, 665 P.2d 815, 820 (Okl.Cr.1982):

The critical question under this exception is whether the statements by the declarant were spoken under the extreme stress of a startling event so that there was no time to fabricate.

■ It is clear that an exciting event occurred, i.e., the departure of the babysitter, leaving the declarant and her infant brother alone. It is inferable from the statement of the declarant to her mother, as related at the in camera hearing on the admissibility of the statements, that the

child witnessed the event. See, 12 O.S. 1981, § 2602. It is also clear that she went to sleep before her parents returned home. Upon waking at about 9:00 A.M. the next morning, she went into a bedroom where her mother was and experienced her first opportunity to relate the event to one of her parents. When her mother asked her where the babysitter went, the declarant said, "She went with the television man."

The child was asleep for virtually the entire time between the exciting event and the statement, allowing no opportunity for fabrication or reflection. We conclude that the statement was properly admitted as an excited utterance; similar statements later that day were merely cumulative, and harmless.

With regard to the confrontation issue, the Confrontation Clause normally requires a showing that a hearsay declarant is unavailable, if not present for cross examination, and, even then, the statement is admissible only if it bears adequate indicia of reliability. "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). In the case at bar, the declarant was unavailable in the required sense due to her age, and the requirement of spontaniety attending the excited utterance exception provides an adequate substitute for the "truth exacting function of an oath." *Lancaster v. People,* 200 Colo. 448, 615 P.2d 720, 723 (1980) (res gestae case).

As his third assignment of error, appellant complains of alleged prosecutorial misconduct. He first asserts that the prosecutor improperly cross examined his wife concerning physical abuse of the couple's young daughter. However, the wife testified on direct examination that the appellant was a good father and had never mistreated his wife or children.

The inquiry went to the contradiction of the witness' testimony on direct examination. This Court has held that any matter is a proper subject of cross examination which may tend to explain, elucidate or contradict testimony given on direct examination. *Hall v. State,* 559 P.2d 856 (Okl. Cr.1977). See also, *Hardin v. State,* 649 P.2d 799 (Okl.Cr.1982).

Appellant next contends in this regard that he was improperly cross examined concerning alleged other crimes evidence. The first such instance involved the alleged attempt of the prosecutor to suggest that appellant left a job due to dishonesty. However, defense counsel wholly failed to object to the inquiry. Moreover, our review of the questioning reveals that it was not such a specific reference to involvement in other offenses as to cause reversal. *Alger v. State,* 603 P.2d 1154 (Okl.Cr.1979). See also, *Mahorney v. State,* 664 P.2d 1042 (Okl.Cr.1983).

Appellant also complains of inquiry concerning his version of the physical abuse of his young daughter. However, defense counsel again failed to object. Before this Court can consider alleged improper cross examination by the State, defense counsel must object and obtain a ruling. *Byrum v. State,* 54 Okl.Cr. 173, 15 P.2d 1096 (1932).

Appellant finally complains of alleged improper closing argument by the State. However, seven of the comments were not objected to by defense counsel. Where the defendant fails to call the attention of the trial court to objectionable statements by timely objection, he is deemed to have waived any objection unless the remarks are so fundamentally prejudicial that the court could not, by instructions to the jury, correct the error. *Neal v. State,* 506 P.2d 936 (Okl.Cr.1973). None of the remarks complained of were of such character that they could not have been so cured, and the error, if any, was waived.

In two other instances, defense objections were overruled. In reviewing the rulings, it is only when argument by counsel for the State is grossly improper and unwarranted upon some point which may affect the appellant's rights that a reversal for improper argument is justified. *Frazi-*

*er v. State,* 607 P.2d 709 (Okl.Cr.1980). Neither of the remarks were grossly improper, and reversible error is not required.

■ Finally, appellant complains of two remarks to which the trial judge sustained defense objections and admonished the jury. The jury delivered a third admonition after denying a defense motion for a mistrial. Where the trial court admonishes the jury not to consider the remarks of counsel, such admonishment usually cures the error, if any, unless it is of such nature that, after considering the evidence, the error appears to have determined the verdict. *Kennedy v. State,* 640 P.2d 971 (Okl. Cr.1982); *Lee v. State,* 572 P.2d 260 (Okl. Cr.1977); and *Kitchens v. State,* 513 P.2d 1300 (Okl.Cr.1973). The remarks at issue tended to societal alarm, and expressed the prosecutor's personal opinion as to the guilt and credibility of the appellant. We do not condone the remarks. However, we are unable to say, in light of the rather strong circumstantial case against appellant and the fact that only the minimum sentence was assessed, that the admonishments were ineffectual, and that mistrial was the only remedy.

■ As his fourth assignment of error, appellant contends that the trial judge erred in refusing to appoint expert witnesses at State expense to assist in the defense. However, we have previously held that there is neither a constitutional requirement nor statutory authority for the appointment of experts at state expense to assist indigent defendants. *Cox v. State,* 644 P.2d 1077 (Okl.Cr.1982). See also, *Huitt v. State,* 562 P.2d 873 (Okl.Cr.1977). This assignment of error is without merit.

■ As his final assignment of error, appellant contends that the jury instructions failed to properly allocate the burden of proof on the issue of alibi. The judge instructed the jury that if they entertained "a reasonable doubt as to whether the defendant was present at the time and place where the crime was committed, if it was committed, then and in that event the jury should give the defendant the benefit of the doubt and acquit him." This instruction substantially comports with the instruction approved by this Court in *Stuart v. State,* 35 Okl.Cr. 103, 249 P. 159 (1926). See also, *Cortez v. State,* 415 P.2d 196 (Okl.Cr.1966).

Instructions are not to be considered in isolation but as a unit; after such consideration, if the totality of the instructions fairly and correctly state the applicable law, they are sufficient. *Nealy v. State,* 636 P.2d 378 (Okl.Cr.1981). The jury was properly instructed elsewhere in the instructions that the State had the burden of proving the charge beyond a reasonable doubt. Viewed as a whole, the instructions were sufficient on this point, and there was no danger that the jury was misled.

The judgment and sentence is AFFIRMED.

PARKS, J., specially concurs.

BRETT, J., concurs.

PARKS, Judge, specially concurring:

I concur in the results of this case; however, I feel it necessary to note my dismay at the attempts by the prosecutor in this case to evoke sympathy and societal alarm from the jury. Prosecutors should be wary of remarks that are intended only to inflame the passion and prejudice of the jury. They should refrain from remarks that are obviously contrary to the established Code of Professional Ethics and Case Law dealing with mitigating facts and propounding unfounded questions to a witness. Were it not for the strong circumstantial evidence in this case, the remarks might have caused prejudicial error.

I concur in the Chief Justice's admonishment to the state to explore alternative forms of proof before introducing live photographs of the victims. In not condoning live photographs, I am expressing a concern for the vast prejudicial impact the photographs could have on a jury. [See *Smith v. State,* 650 P.2d 904, 910 (Okl. Cr.1982) in footnote 10.]