Richard B. JOHNSON, alias Charles E. Johnson, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13249.

Court of Criminal Appeals of Oklahoma.

Jan. 9, 1963.

Rehearing Denied April 3, 1963.

J. B. Champion, Jr., Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for defendant in error.

NIX, Presiding Judge.

Richard B. Johnson, alias Charles E. Johnson was charged by Information in the Superior Court of Carter County with the crime of Sodomy. He was tried before a jury, found guilty, and sentenced to serve 10 years in the Oklahoma State Penitentiary.

The defendant lodged his appeal in the time prescribed by law and relies for reversal upon four assignments of error.

The first contention made by defendant is that the trial Judge committed error in overruling defendant's demurrer to the evidence. The crime charged belongs to that class of offenses, as Judge Davenport once referred to as—"a charge easily made, hard to prove, and still harder to disprove." In such cases, jurors are sometimes moved by abhorrence of the offense to convict upon slight evidence; therefore, the Court will carefully examine the record to see that there was some substantive evidence to warrant a verdict of Guilty.

The State relied in the instant case upon the testimony of minors of tender years, consequently we have given thorough study to the transcript of the testimony; which reveals that on the 1st of August, 1962, four boys were swimming in Cache Creek about ½ mile west of Cache. They were Deyo Pahcheka—12 years of age; Paul Pahcheka—10 years of age; Donald Wermy—7 years

of age; and Ronald Wermy—11 years of age.

While they were swimming, they observed a man lying on the bank in the nude. He had a green colored jeep and a bulldog he called "Beatnik". The man later entered the water and swam with the boys. Deyo Pahcheka testified as follows, without objections or exceptions:

"Q. I will ask you to look around the room and see if you saw anybody there while you were swimming that is in this room?

"A. Yes.

"Q. Who do you see?

"A. (Indicates defendant)

"Q. Do you recognize this gentleman here, was he there?

"A. Yes, sir.

"Q. When did you first notice him?

"A. While we were in the water.

"Q. What did he do? Did he do anything while he was there?

"A. Yes.

"MR. OERKE: Don't lead him, please.

"Q. You say you saw him. Was he dressed when you saw him?

"A. No.

"Q. Was he naked?

"A. Yes.

"Q. What happened there?

"A. Well, he caught Junior and he got behind him and pretty soon he turned him loose and then he caught me and took me on the bank.

"BY THE COURT: A little louder, Son; just a little louder.

"A. Well, he got Junior and he got behind him and he stuck it in him and then he turned him loose pretty soon and he caught me and took me on the bank and stuck it in me and then he turned me loose.

"Q. Where did he stick it in you?

"A. In my crack.

"Q. Do you know what the rectum of the body is?

"A. Yes, sir.

"Q. Were you standing up or did he lay you down?

"A. Laying down.

"Q. Did you have on any clothes?

"A. Yes.

"Q. What did you have on?

"A. Shorts.

"Q. What happened to the shorts?

"A. He took them off.

"Q. He laid you down on the ground?

"A. Yes, sir.

"Q. Do you know what, when you talk about stuck it in, are you talking about a man's tool, or a man's male organ?

"A. Yes.

"Q. And you say he laid you down on the ground and pulled your shorts down and stuck it in you?

"A. Yes.

"Q. Did you feel it?

"A. Yes.

"Q. Did he stick it right up in you?

"A. Yes.

"Q. Was his tool erect? Do you know what I mean by that?

"A. Yes.

"Q. You are a twelve-year-old boy, aren't you?

"A. Yes, sir.

"Q. And you know the parts of your body, do you?

"A. Yes, sir.

"Q. And do you know the parts of the body of a man?

"A. Yes, sir.

"Q. And then did anything further happen then?

"A. Well, he turned me loose.

"Q. Did he have you down on the ground?

"A. Yes.

"Q. And then what did he do when he he turned you loose, do you remember?

"A. No, he left."

He further described the jeep as a dark green.

Paul Pahcheka testified without objection to the following:

"A. We set our lines out and we were going swimming and we went on the north side of the bridge and over there we were swimming around and we saw this jeep and we though he was fishing or hunting and we just went on swimming and we started swimming around in there, and he was swimming and had a dog named Beatnik; that's what he called it. And he was swimming around there and he had an intertube and he give it to Junior and when he went out there and he was behind Junior and holding him, and he let him go after awhile, and then he caught Deyo and took him on the bank ——

"Q. Caught who, now?

"A. Deyo.

"Q. Deyo Pahcheka, is that your brother?

"A. Yes, sir.

"Q. What did he do?

"A. He took him on the bank and pulled his shorts down and—

"Q. Tell the jury what he did.

"A. And pulled his tool out and he stuck it in Deyo. (Witness sobs)

"Q. Where did he stick it in him?

"A. In his rectum.

"Q. Did you see that, Paul?

"A. No.

"Q. Honey, did you see him there with Deyo?

"A. Yes.

"Q. And did you see his tool?

"A. No.

"Q. You didn't see the tool. Did you see it at any time?

"A. Yes.

"Q. Did you see it before he stuck it in him?

"A. Yes.

"Q. What condition was it in, Paul? Do you know what I mean, what was the condition of his tool, was it sticking out, or was it limp?

"A. It was sticking out.

"Q. Did he touch his tool, did you notice him touch it?

"A. No.

"Q. Now, you say he stuck it in Deyo. Tell the jury what you saw happen there, their position on the bank.

"A. Deyo was on the ground and he was on top of him.

"Q. State that again so this jury can hear it.

"A. Deyo was on the ground and he was on top of him.

"Q. Now, Paul, you were in my office a few minutes ago, were you not, with the boys?

"A. Yes.

"Q. Who was in the room there?

"A. Donald Wermy, and Junior, and Ronnie and Deyo and Don and my father.

"Q. I want you to stand up and look about this room and see if you can identify the man that you say put Deyo on the ground and stuck his tool in him.

"A. There.

"Q. Are you positive that's the man?

"A. Yes."

Ronald Wermy testified without objection to the following:

"Q. When you went into the water you were in your underwear. Did you see any vehicles around there of any kind?

"A. Yes.

"Q. What kind?

"A. A jeep.

"Q. What color was it?

"A. It was green, I think.

"Q. Was there anybody in the jeep?

"A. No.

"Q. Did you see any dogs around there?

"A. Yes.

"Q. What kind?

"A. A bulldog or a boxer.

"Q. Do you know what color that dog was?

"A. Blackish-grey, I think.

"Q. Now was there anybody with that dog?

"A. Yes.

"Q. Do you see anybody in the court-room here that was out there at that time you four boys were there?

"A. Yes.

"Q. Will you point him out to the jury?

"A. (Indicates defendant).

"Q. Are you positive this is the man?

"A. Yes.

"Q. What happened there? Just go ahead and tell the jury what happened while you were there in swimming?

"A. Well, we got in the water and when we got over there he was sitting on the bank and we swam around there for awhile and he come in there and he gave Junior an intertube to swim on, and he was swimming around and he got behind Junior, and pretty soon he let go and went after Deyo.

"Q. Deyo's last name is what?

"A. Deyo Pahcheka.

"Q. You say he went after him. What did he do?

"A. He got Deyo and put him on the bank.

"Q. And then what occurred?

"A. Well, he got on top of him.

"Q. How was he dressed at the time?

"A. He didn't have nothing on.

"Q. He didn't have nothing on. He was naked then. Did you see him do anything to Deyo?

"A. Yes.

"Q. What did he do?

"A. He got on top of him.

"Q. When he got on top of him did you see anything else occur?

"A. Yes.

"Q. What?

"A. His—uh—his—

"Q. Speak out and tell the jury. Don't tell them anything except what you saw.

"A. His—uh—his—

"Q. Can you explain to this jury what's in your mind? Go ahead and tell them just like you were telling it to another boy.

"A. His penis, I guess—

"Q. Did you see his penis?

"A. Yes.

"Q. What condition was it in, was it sticking out?

"A. Yes, it was sticking out.

"Q. Well, did you see him stick his penis in Deyo, is that what you are telling this jury?

"A. Yes."

It is to be observed that the testimony of these witnesses proved substantial evidence as to the commission of the offense. The cross-examination failed to shake the boys from their story. The identification was positive and their story was consistent. In fact, their testimony projected more than average intelligence for boys of their age. Certainly it could be said that the testimony of those 3 boys was sufficient to support a verdict of Guilty.

The defendants defense was an alibi that he was not at the creek in which the boys were swimming that day or any other day. That he was attending to business matters on the day in question. That he visited the post office in Medicine Park, the County Attorney's office, the Sheriff's office, the Police Station, Ramey's Finance Company and the Welfare Department all of which took most of the day. He further testified he could not go in swimming. That because of a war injury he had a silver plate in his knee that prohibited him from going into water below body temperature. He admitted having a green Jeep and a boxer dog named "Beady". Three witnesses attempted to verify defendant's alibi, but could not fix the date or time defendant visited them. Evidently the jurors didn't believe his story. Three rebuttal witnesses testified without objection that they had seen defendant with a dog and a jeep at the swimming hole in question.

■ This Court has adhered closely to the rule stated in Newman v. State, 44 Okl.Cr. 137, 279 P. 980:

"A conviction will be reversed on the ground of insufficient evidence only where it is not supported by substantial evidence from which the jury may reasonably and logically find the defendant guilty, or where it is so insufficient that the court can say that the jury must have acted from partiality, passion, or prejudice."

The attorney for the defendant asks the court to discount their testimony because of tender years. In this connection we might call attention to the Statute as it effects minors who become witnesses. Title 12 O.S.A. § 385, states:

"The following persons shall be incompetent to testify:

\* \* \* \* \* \*

"Children under ten (10) years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly."

Objections were made by defense counsel to only one witness who came within this category. Donald Wermy was 7 years of age. He testified for the State. When the witness was placed upon the stand the county attorney asked the following questions:

"Q. State your name and talk loud enough these gentlemen can hear you. You just talk to these gentlemen right here. What is your name?

"A. Donald Wermy.

"Q. What?

"A. Donald Wermy.

"Q. What do the boys call you?

"A. Junior.

"Q. How old are you, Donald?

"A. Seven.

"Q. Where do you live? Where's your home?

"A. In the country.

"Q. Do you live out near Cache, Oklahoma?

"A. Yes.

"Q. Now, have you got a father and mother living?

"A. Yes, sir.

"Q. Do they send you to school?

"A. Yes.

"Q. Where do you go to school, Donald?

"A. Cache.

"Q. Now, do you go swimming and fishing once in a while?

"A. Yes.

"MR. OERKE: I think to qualify this witness as a competent witness, he should go further into the education and knowledge.

"THE COURT: Yes, and his knowledge of right and wrong.

"Q. Donald, do you go to Sunday School?

"A. Yes.

"Q. Where do you go?

"A. Toward Indiahoma.

"Q. What do you call that Church?

"A. Nazarene.

"Q. Nazarene Church. Do you have a sunday school teacher?

"A. Yes.

"Q. Do you know what it means to tell the truth?

"A. Yes.

"Q. Do you know what happens to boys that don't tell the truth?

"A. Yes.

"Q. What happens?

"A. They get a spanking.

"Q. Are you going to tell these gentlemen the truth here today?

"A. Yes.

"Q. All right, Judge, I believe—

"THE COURT: I believe that · is sufficient."

At this point defense counsel objected to the witness testifying because of his infancy, which objection was overruled. Defense counsel objected further and requested an opportunity to question the witness relative to his qualifications. He was permitted to do so in the following manner:

"MR. OERKE: May I renew my objections and ask a couple of qualifying questions as to what this boy remembers and who he has talked to, Judge.

"THE COURT: If you care to, go ahead.

"Q. Junior, do you know time of day?

"A. Yes.

"Q. Do you know morning from evening?

"A. Yes.

"Q. Junior, before coming on the witness stand today, did anybody talk to you about what you were to testify to?

"A. No.

"Q. Did you talk to Mr. Silvers before today, did you talk to him?

"A. Yes.

"Q. Did he ask you questions like he's asking you now?

"A. Yes.

"Q. Did you talk to your folks?

"A. Yes.

"Q. Is your daddy here?

"A. Yes.

"Q. Did you talk to him about what you are going to testify to?

"A. Yes.

"Q. Did anyone tell you what to say today?

"A. No.

"Q. But you state now you don't know what time of day this was when you were in swimming?

"A. Yes.

"Q. You don't know what time of day it was?

"A. No.

"Q. How many days had you been swimming in that creek, how many different days along last summer?"

On cross-examination there was some degree of confusion in the boy's testimony, but the trial judge was in a much better position to determine his ability to testify than this Court. He had an opportunity to observe witnesses appearance, his facial expression, his emotions and his reactions. The test under the Statute is measured by whether or not a minor under 10 years of age appears capable of reviewing just impressions of the facts concerning which he is examined, or of relating them truly. Measured by this test, the witness indicated he was capable of such impressions of simple facts that he testified to. It was not made to affirmatively appear that he was incompetent.

■ This Court passed upon the question in the case of Stuart v. State, 35 Okl.Cr. 103, 249 P. 159:

"The question of the competency of a witness under 10 years of age is a mixed question of law and fact addressed peculiarly to the discretion of the trial court. When a witness is objected to on the ground of incompetency by reason of nonage, the trial court should examine and determine the witness' competency, and if it affirmatively appear that the witness is incapable of receiving just impressions of the facts respecting which such witness is examined or of relating them truly, such testimony should be rejected; otherwise it should be admitted."

In the instant case, both the attorney for the State and for the defense were given opportunity to ask the witness qualifying questions and were apparently satisfied when the trial judge declared him to be a qualified witness, because there were no further objections. Therefore, we see no reason to disturb or interfere with the courts finding that he was a competent witness.

■ Defendant next contends that the trial court erred in admitting evidence of a previous conviction. The casemade shows that the County Attorney propounded a question to the defendant relative to a previous California conviction of Sodomy. Defendant answered he was not convicted of Sodomy, but Lascivious and Lewd Conduct. Defendant contends this injected an inflammatory and prejudicial matter into the trial and that it was wholly incompetent.

*The record reflects that no objection was made to the QUESTION, NOR EXCEPTION SAVED.* Nor did defense counsel request that the jury be admonished not to consider it. He remained absolutely silent. The trial court was given no opportunity to pass upon the competency, as no objection was raised. This Court said in Johnson v. State, 1 Okl.Cr. 321, 97 P. 1059:

"Objections to alleged errors, committed during a trial, must be made in apt time, so as to allow the trial court to rule upon the objection before action is taken. It is too late to complain after the trial is ended."

There are other assignments of error complained of that fall in the same category. The defendant complains of improper remarks of the County Attorney and of erroneous instructions, but these matters transpired without objection, therefore, the Court does not deem it necessary to discuss them at length.

The Instructions given have been carefully considered. The crime charged is in the language of the Statute in that the defendant did * * *

"Then and there wilfully, unlawfully, wrongfully, knowingly, and feloniously commit the *detestable and abominable* crime against nature with a certain person to wit: Deyo Pahcheka, age 12, and did then and there have unlawfully and feloniously carnal knowledge of the body of said Deyo Pahcheka * * "

■ Defendant objects to the language *Detestable and abominable* as being prejudicial.

■ In the case of Roberts v. State, 57 Okl.Cr. 244, 47 P.2d 607, the crime of Sodomy was stated in the identical language which is set forth in the Statute and the case at bar. The Court said:

"The detestable and abominable crime against nature, committed with mankind or a beast made punishable by Penal Code (section 2553 St.1931), includes not only the offense of sodomy, but any other act as bestial, or unnatural copulation."

"An information charging the commission of the crime against nature,

in the language of the statute, with a person named, is sufficient."

 The *Instructions* described the crime in the same manner as it was described in the Information to which there was no objection, and in the same language as the Statute. Therefore, it did not constitute error of a fundamental nature and as this Court has said many times before:

"Where Instructions are not properly excepted to, they will not be considered except as to fundamental error." See Howard v. State, 39 Okl.Cr. 336, 265 P. 149; Maddox v. State, 12 O.C. 462, 158 P. 883.

The attorney who appealed the case did not appear in the trial of the case, though he is to be commended upon filing an excellent brief, the record was not sufficiently preserved to give his contentions merit. The record was made almost without objection or exception.

For the above reason, and foregoing authorities, the judgment and sentence of the trial court is affirmed.

BRETT and BUSSEY, JJ., concur.