Calvin Morris **PATRICK,** Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–16485.

Court of Criminal Appeals of Oklahoma.

Oct. 25, 1972.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Nathan Gigger, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Calvin Morris Patrick, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Oklahoma, for the offense of Murder; his punishment was fixed at Death and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Thomas Berryhill testified that he was nineteen (19) years of age and

lived with his family at 3909 Sherry Lane in Oklahoma City. The family residing at the address consisted of three sisters, Jan, Donna and Trudy, his mother and the defendant, his stepfather. On October 18, 1970 his mother awakened him about 9:00 a.m. and he went to the bathroom to take a bath in preparation for church. While taking a bath, he overheard his mother and the defendant "yelling at each other" in their bedroom. The defendant came to the bathroom and showed him an empty liquor bottle stating that his mother should not go to church. Defendant returned to the bedroom and the argument resumed, defendant demanding that she fix breakfast. Thomas went to the bedroom door whereupon defendant stated that he was going to leave. His mother said "If you are going to leave, leave the gun there." Defendant then asked Thomas if it was all right for him to leave and Thomas replied, "My mother says to leave the gun."

Defendant then turned to the bed "as if he was going to lay it on the bed and turned back around and shot at me." (Tr. 14) The shot struck him in the chest area. He spun around and a second shot struck him in the back. He identified the pistol as a .22 that belonged to his mother. After the second shot, he ran to his room and closed the door. He heard other shots and ran to a neighbor's house, followed shortly by defendant. The defendant stated, "Let's see how bad you are now." The defendant got in the car and drove off.

On cross-examination, he testified that the disciplining of the children was left to his mother and the defendant did not try to interfere with the children. On one earlier occasion, the defendant and his mother got into an argument and the defendant shot the pistol twice into the ceiling.

Barbara Berryhill testified that on October 18, 1970 she was living at 3909 Sherry Lane with the defendant, who was then her husband, and her children, Thomas Berryhill, age nineteen, Donna Berryhill, age nine, Jan Berryhill, age sixteen, and Trudy Berryhill, age seven. She awoke about 9:00 that morning and started the children getting ready for church. Thomas was taking a bath and the three girls were in the living room polishing their shoes. She returned to the bedroom wherein the defendant suggested that she shouldn't go to church because she had drunk all his liquor. They argued and the defendant demanded that she fix him breakfast. She agreed to fix breakfast and told the children that they would not go to church. The argument continued and the defendant called Thomas to the bedroom door "trying to explain to him about the liquor bottle." Thereafter, the defendant stated that he was going to leave just like he was "leaving for good" and she told him to leave the gun. Thomas said, "Well, if you are leaving, leave the gun." Defendant started toward the bed, reached in his right pocket, turned around and fired two shots at Thomas. Defendant left the bedroom and as she followed, he pushed the door back causing her to fall. She then heard four additional shots. As she entered the living room, the defendant was going out the front door. She observed her daughter Donna in a chair by the exit door unconscious with blood on her face. She then called the operator for them to send the police and ambulance. She identified State's Exhibit 1 as the .22-caliber pistol that the defendant was shooting.

On cross-examination, she testified that the defendant was good to the children and left the responsibility of disciplining them to her. She testified that on one occasion the defendant drew the pistol on her and fired one shot into the ceiling.

Officer Brown testified that he arrived at the scene on the morning in question and obtained a description of the defendant and his car. While patrolling his district at approximately 12:10 p.m. he observed the defendant's vehicle just leaving the parking lot of the Red Rock Motel. He approached the vehicle on the driver's side and asked the defendant his name. The defendant replied that his name was

George Washington. He asked the defendant to get out of the car and as he was searching him, the defendant stated, "I am your man." He found State's Exhibit 1, the .22 pistol, and a partially filled half-pint bottle of Vodka in the defendant's pockets. He advised the defendant of his constitutional rights. The defendant stated that he and his wife had been arguing that morning and that his wife and son attacked him with a pistol. He had wrestled away from one of them and fired in self-defense.

The defendant was placed in the back seat of the patrol unit and was again advised of his Miranda rights. He then stated that his wife had been drinking all night and that morning became upset when he suggested that she not go to church. She and Thomas got into an argument and wrestled into the bedroom where his wife got the gun. Thomas took the gun away from her and started shooting the gun into the air. After emptying the pistol, he threw it down and ran from the house. The defendant then picked up the weapon and left. He testified that, in his opinion, the defendant was not intoxicated.

Officer Christian testified that he interrogated the defendant at the City Jail about 12:45 p.m. After giving the defendant his Miranda warning, the defendant said his wife had been drinking and arguing and got the .22 pistol, threatened the defendant and shot it a couple of times. Her son entered the bedroom and all three struggled for the pistol, during which time, it discharged several more times. The defendant finally got the gun and ran. Shortly after making the statement, the defendant further added that during the struggle the other children came in and attacked him with knives. He testified that, in his opinion, the defendant was intoxicated at the time of the interrogation.

Officer Connelly identified certain pictures he took of the scene. He further testified that he administered a paraffin test to the defendant about 1:00 p.m. The

test was positive for both hands of the defendant.

Dr. Luke, State Medical Examiner, testified that he performed an autopsy on Donna Berryhill on October 19, 1970. The cause of death was a .22-caliber bullet wound in the head.

The defendant testified in his own defense that he had been married to Barbara a little over a year, during which time they had no more than the usual husband and wife "tiffs." On one occasion she became upset at some misconduct of her oldest daughter, grabbed the pistol and fired it into the ceiling. On the morning in question, he was awakened by an argument between his wife and Thomas. He called Thomas to the bedroom and told him not to pay any attention to his mother because she had been drinking and showed him the empty whiskey bottle. He started putting his clothes on when Barbara asked him where he was going. He stated that he was going out. Barbara got the pistol and stated that he wasn't going "no damn where." She and Thomas started struggling and the pistol was fired twice. He attempted to separate them and Thomas shoved her back against him and they both fell to the floor. Thomas ran from the room and the defendant heard three or four more shots. Thomas dropped the pistol on the porch as he left the house. The defendant picked up the pistol, jumped into his car and went to the Seven-Eleven Store to call the police. He denied ever firing the gun and denied having drunk anything the evening before.

In rebuttal, Trudy Berryhill testified that she was six years old and in the first grade. On the morning in question, she and her sisters, Jan and Donna, were in the front room polishing their shoes. The defendant came into the front room and started shooting. The defendant did not say anything while he was shooting. She ran down the street to her neighbor's house.

The first proposition asserts that the jury was improperly impanelled respecting

the death penalty. Because of the ultimate conclusion reached, we do not deem it necessary to discuss this proposition. In Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, the Court stated:

"In Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, we have held that a death sentence cannot constitutionally be executed if imposed by a jury from which have been excluded for cause those who, without more, are opposed to capital punishment or have conscientious scruples against imposing the death penalty. Our decision in Witherspoon does not govern the present case, because here the jury recommended a sentence of life imprisonment. * * *"

■ The second proposition contends that the trial court should have instructed on manslaughter. The defendant argues that because of the evidence that the defendant was intoxicated that morning, the court should have given a manslaughter instruction even though it was not requested. The record reflects that the only evidence that the defendant was intoxicated was by Officer Christian who interrogated the defendant at approximately 12:45 p. m. Officer Brown, who arrested the defendant at 12:10 p. m., testified that the defendant had been drinking but was not intoxicated. The defendant further stated to the officer that he had not been drinking prior to the incident and purchased the bottle of Vodka after it happened. (Tr. 78) The defendant testified that he did not drink anything the previous night. There was no testimony that the defendant consumed any alcoholic beverage until after the shooting had occurred. We therefore conclude that the trial court did not err in failing to give a manslaughter instruction based upon defendant's intoxication.

■ The third proposition asserts that the court erred in permitting an incompetent witness to testify. Defendant argues that the witness, Trudy Berryhill, does not meet the test of 12 O.S., § 385. In dealing with a similar question in Johnson v. State, Okl.Cr., 380 P.2d 284, the Court stated:

"On cross-examination there was some degree of confusion in the boy's testimony, but the trial judge was in a much better position to determine his ability to testify than this Court. He had an opportunity to observe witnesses appearance, [sic] his facial expression, his emotions and his reactions. The test under the Statute is measured by whether or not a minor under 10 years of age appears capable of reviewing just impressions of the facts concerning which he is examined, or of relating them truly. Measured by this test, the witness indicated he was capable of such impressions of simple facts that he testified to. It was not made to affirmatively appear that he was incompetent.

"This Court passed upon the question in the case of Stuart v. State, 35 Okl.Cr. 103, 249 P. 159:

'The question of the competency of a witness under 10 years of age is a mixed question of law and fact addressed peculiarly to the discretion of the trial court. When a witness is objected to on the ground of incompetency by reason of nonage, the trial court should examine and determine the witness' competency, and if it affirmatively appear that the witness is incapable of receiving just impressions of the facts respecting which such witness is examined or of relating them truly, such testimony should be rejected; otherwise it should be admitted.'"

We have carefully examined the testimony of Trudy Berryhill and are of the opinion that the witness appeared capable of receiving just impressions of what she observed in the living room on the morning in question. Her identification of the defendant as being the person that did the shooting was positive and despite cross-examination by defense counsel, the witness' testimony remained intact. We therefore find this proposition to be without merit.

■ The final proposition contends that prejudicial questions were asked suggesting another homicide. Defendant states, "In spite of the court's rulings denying this line of inquiry, the fact became obvious to the jury that another homicide had occurred that morning other than the murder for which defendant was on trial." We need only observe that although there was no direct testimony that the defendant did shoot and kill Jan Berryhill, had such evidence been introduced, it would have been proper as being part of the res gestae.

■ Because of the holdings of the United States Supreme Court in Furman v. Georgia, Jackson v. Georgia, Branch v. Texas, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346, wherein it was held that the imposition and carrying out of the death penalty in these cases constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, the judgment and sentence is accordingly modified from death by electrocution to Life imprisonment, and as so modified, is affirmed.

Modified and affirmed.

BRETT, J., concurs.