**Jerry Don SHARP, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17740.**

Court of Criminal Appeals of Oklahoma.

May 30, 1973.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Jerry Don Sharp, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Case No. CRF–71–2684, for the offense of Murder. His punishment was fixed at life imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial Lieutenant Don Rodgers testified that he was in charge of the Crime Laboratory at the Oklahoma City Police Department; that he sent certain articles of physical evidence to the FBI laboratory in Washington, D. C., and subsequently received the exhibits back from said laboratory.

James Fletcher Williams testified that on October 15, 1971, he was staying at his father's private railroad car at Frontier City watching television. Early the next morning he went out to his car and found a broken window on the driver's side. He attempted to find the night watchman and found him apparently asleep in his car. He contacted the former watchman, Leon Rinehart, and they returned to Jack Turner's car. Rinehart attempted to awaken Turner and upon failing to do so, they called the police. A garage door opener and some stereo tapes were missing from Williams' car.

Leon Rinehart testified that about 4:00 a. m. on October 16, 1971, he was awakened by Fletcher Williams. They proceeded down the street to the general office where he attempted to awaken Jack Turner. Upon failing to do so, he touched Turner's left arm and "he felt like he was dead." The last time clock had been punched at 1:45 a. m. After the police arrived, he observed scratches on Turner's left wrist.

Officer W. E. Martin testified that he went to Frontier City in the early morning hours of October 16. He observed the body of Jack Turner inside a car. He ascertained that Turner was dead and radioed headquarters for further assistance.

Officer T. Stinson, a lab technician, testified that he made an investigation at the scene. He identified various photographs and a plastic case of a heel print, which he took near the west gate of Frontier City.

Officer Tom Bevel, a lab technician, identified certain photographs he took of the scene. He found a spent bullet on the floorboard of Turner's car, which he turned to Lt. Rodgers.

Pearl Turner, Jack Turner's widow, testified that when her husband went to work on October 15, he had a .38 caliber revolver and wore a wrist watch on his left arm. She identified State's Exhibit 4 as the box that had contained his gun.

Orville Aaron Burr identified State's Exhibit 25, a .30–06 rifle, as the gun he sold the defendant.

Michele Natalie Rendelman testified that on October 15, 1971, she lived at 10 Southwest 26th with defendant and Robert Pur-

due; that sometime after October 16, 1971, the defendant gave a rifle similar to State's Exhibit 25 to Joe Yadon.

Officer Don Schimmels testified that he received an anonymous telephone call and as a result of the call, went to a pond at 10801 South Western. He observed a diver retrieve State's Exhibit 25 from the pond.

Joe P. Yadon, Jr., testified that he was defendant's landlord; that the defendant was apprehensive "about a warrant supposedly issued for him and he didn't want the gun to be found in the house." (Tr. 216) The defendant gave him State's Exhibit 25, which he subsequently threw in a pond. He made the anonymous telephone call to Officer Schimmels.

Officer Yasevich testified that he assisted in recovering State's Exhibit 25 from the pond. He transported the rifle to Lt. Rodgers' office.

Officer R. W. Smith testified that on November 9, 1971, he obtained a search warrant to search the defendant's car. He observed a spent cartridge case, State's Exhibit 8, and a pistol later identified as State's Exhibit 28, in the trunk of the car.

Robert Zimmers, a firearms identification expert employed by the Federal Bureau of Investigation, testified that he examined various items sent to him from the Oklahoma City Police Department. In his opinion, the cartridge case found in defendant's car trunk was fired from State's Exhibit 25. He could not positively state that the bullet fragments taken from Jack Turner's car were fired from State's Exhibit 25 because of distortion and absence of sufficient markings. He determined that the serial number on the butt of State's Exhibit 28 had been altered reflecting serial number 613500. He determined that the true serial number of the pistol was 526712. The factory box containing Jack Turner's pistol also bore serial number 526712.

Vernon Calhoun testified that he was the owner of the House of Gems, in Frontier City; that on October 11, 1971, he had a burglar alarm system installed.

Teddy Eugene Herndon, a co-defendant, testified that on October 15, 1971, he was living with the defendant; that the defendant and co-defendant Michael Ray Jolly discussed burglarizing the Indian Trading Post at Frontier City; that somewhere between 11:00 and 12:00 p. m. they proceeded to a club near Frontier City, the defendant driving the car. The defendant had State's Exhibit 25, the .30–06 rifle, he had a pistol and Jolly had a pry bar. They entered Frontier City, he doing so by climbing over a fence, during which he left heel prints with his shoes. They watched the night watchman park his car, the defendant watching him through the scope on his rifle. Defendant asked if they thought he could shoot the guard. Jolly said "Sure, go ahead." Defendant then shot and Jolly picked up the hull of the bullet. He (Herndon) broke and ran and shortly thereafter returned to the guard's car. The defendant was inside the guard's car going through his pockets. The defendant told him to go check the House of Gems and see if it had a burglary alarm. After ascertaining that it had a burglar alarm, he returned to the guard's car. The defendant took the guard's pistol, wrist watch and money. Before leaving Frontier City, he and Jolly burglarized a parked car, taking stereo tapes and a garage door opener. They returned to the defendant's car and Jolly threw the hull he picked up into the trunk. Defendant gave each of them twenty dollars ($20.00). As they were driving away from Frontier City, the defendant said "Anybody that turns State's evidence won't walk the street." (Tr. 279) The defendant later told him that he had given the rifle to his landlord and had changed the serial number on the watchman's gun. He admitted giving police a sworn written statement which varied from his present account of what transpired.

Officer Don Rodgers testified that the defendant's date of birth was June 13, 1950. (Which corresponded with the altered serial number on State's Exhibit 28.)

The party stipulated that the district attorney's office had indicated to Herndon's attorney a willingness to let him plead guilty to twenty-five (25) years on a First Degree Manslaughter charge. The defendant did not testify nor was any testimony offered in his behalf.

■ The first proposition asserts that the verdict is not supported by the evidence. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Turner v. State, Okl.Cr., 479 P.2d 631.

■ The second proposition contends that the punishment is excessive. Suffice it to say from the foregoing statement of facts the sentence imposed does not shock the conscience of this Court.

■ The third proposition asserts that the jury was improperly empanelled respecting the death penalty. In dealing with an identical proposition in the recent case of Patrick v. State, Okl.Cr., 502 P.2d 1289, we stated:

"Because of the ultimate conclusion reached, we do not deem it necessary to discuss this proposition. In Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, the Court stated: 'In Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, we have held that a death sentence cannot constitutionally be executed if imposed by a jury from which have been excluded for cause those who, without more, are opposed to capital punishment or have conscientious scruples against imposing the death penalty. Our decision in Witherspoon does not govern the present case, because here the jury recommended a sentence of life imprisonment. * * * '"

■ The fourth proposition contends that the trial court erred in denying defendant's pretrial motion that he be allowed to act as his own co-counsel. The record does not reflect that a ruling was made on defendant's pretrial motion, but it was conceded at the trial that the motion was overruled. The matter was not raised again, counsel apparently relying on the finality of the pre-trial ruling until the conclusion of the State's evidence. Defendant did request and was permitted to address a closing argument to the jury. We are of the opinion that the trial court's denial of defendant's motion does not constitute fundamental error. The record reflects that the defendant's trial counsel was well prepared, competent and defended the case in a highly professional manner. It would thus appear that defendant could not have been harmed by not being able to act as his own co-counsel.

■ The final proposition asserts that an evidentiary harpoon was injected into the trial. The record reflects that the witness Joe Yadon was asked the following:

"Q. And, what was the occasion of you getting custody of the gun?

"A. You mean the reason for him giving it to me?

"Q. Yes, sir.

"A. He was apprehensive about a warrant supposedly issued for him and he didn't want the gun to be found in the house and he gave it to me to keep for him." (Tr. 215)

Defendant candidly admits that "but here, the jury might well have thought that the warrant, if it existed, was related to the offense for which defendant was on trial. In any event if it was a harpoon, it was a mild one and could not have inflamed the jury since they gave a life sentence—the minimum, when the State was seeking the death penalty."

In conclusion we observe that the record is free of any error which would require reversal or justify modification. The judgment and sentence is affirmed.

BLISS, P. J., and BRETT, J., concur.